UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN JAMES DABNEY,

Petitioner,

v.

SHANE PLACE,

Respondent.

_____/

Case No. 14-cv-14935

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**OPINION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY
JUDGMENT [13], DENYING CERTIFICATE OF APPEALABILITY, AND DENYING
PETITIONER'S MOTION TO ADDRESS RESPONDENT'S FAILURE TO FILE AN
ANSWER [15] AND MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO
MOTION [16] AS MOOT**

**I. INTRODUCTION**

Petitioner Brian Dabney filed a petition for a writ of habeas corpus under 28
U.S.C. § 2254. Dabney is a state prisoner in the custody of the Michigan Department
of Corrections pursuant to convictions for first-degree premeditated murder, assault
with intent to murder, and felony firearm. Respondent has filed a motion for
summary judgment, arguing that the petition should be denied because it is
untimely. Dkt. No. 13. For the reasons stated herein, the Court finds the petition for a
writ of habeas corpus is untimely and grants the Respondent's motion. The Court
also declines to issue Petitioner a certificate of appealability.

-1-

## II. BACKGROUND AND PROCEDURAL HISTORY

Dabney's convictions arise from a shooting that occurred at a drug house in Detroit on February 16, 2006. Two men, Alejandro Mauricio and Alberto Leon-Torres, died from their injuries. A third man, Michael Lucas, was shot in the head but survived. The Michigan Court of Appeals summarized the testimony presented at trial as follows:

> This case arose after defendant and another unidentified man entered a drug house. There, the men murdered two victims in a back room. They killed one man with a single gunshot to the back of the head and another with several shots in the back. [Lucas] was in a bedroom at the front of the house at the time and went to investigate the noise. After defendant successfully explained the noise away as firecrackers, [Lucas] returned to his room. Defendant entered the front bedroom and shot [Lucas] in the back of the head several times. [Lucas] recalled seeing his own blood hit the wall before he lost consciousness. He regained consciousness long enough to hear defendant instructing the other man to break out a window, take [Lucas'] shoes and pants, and beat a hasty retreat. After a long period passed, [Lucas] remarkably revived and managed to call for help. He later identified defendant as the shooter. Police tests found that defendant's hands and face were covered in gunshot residue, and that the fired bullets found in the front bedroom were fired from a handgun that defendant had arranged for a friend to hide.

*People v. Dabney*, 2007 WL 4404632, at *1 (Mich. Ct. App. Dec. 18, 2007).

Dabney was convicted by a jury in Wayne County Circuit Court of two counts of first degree murder, Mich. Comp. Laws § 750.316, assault with intent to murder, Mich. Comp. Laws § 750.83, and possession of a firearm during the commission of

a felony, Mich. Comp. Laws § 750.227b. On July 25, 2006, he was sentenced to life in prison without parole for each first-degree murder conviction, 23 years, 9 months to 45 years in prison for the assault with intent to murder conviction, and two years in prison for the felony-firearm conviction.

Dabney filed an appeal of right in the Michigan Court of Appeals. The Michigan Court of Appeals affirmed Dabney's convictions. *People v. Dabney*, No. 272245, 2007 WL 4404632 (Mich. Ct. App. Dec. 18, 2007). The Michigan Supreme Court rejected Dabney's application for leave to appeal because it was filed beyond the applicable 56-day time limitation. *See* 6/10/15 Affidavit of Larry Royster, Clerk, Michigan Supreme Court (Dkt. No. 14-18, Pg. ID No. 1506).

On February 17, 2011, Dabney filed a motion for relief from judgment in the trial court. The trial court denied the motion. *See* 9/21/11 Order (Dkt. No. 14-21). The Michigan Court of Appeals denied Dabney's application for leave to appeal the trial court's denial. *People v. Dabney*, No. 312489 (Mich. Ct. App. Apr. 25, 2013) (Dkt. No. 14-24). The Michigan Supreme Court also denied Dabney's application for leave to appeal, *People v. Dabney*, 495 Mich. 912 (Mich. Dec. 23, 2013), and denied his motion for reconsideration. *People v. Dabney*, 495 Mich. 997 (Mich. App. 28, 2014).

Dabney filed this habeas petition on December 8, 2014.

-3-

### III. LEGAL STANDARD

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party, and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. If the non-moving party, after sufficient opportunity for discovery, is unable to meet his or her burden

-4-

of proof, summary judgment is clearly proper. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

Respondent argues that the petition is barred by the one-year statute of limitations. A prisoner must file a federal habeas corpus petition within one year of the "date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . or the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1)(A), (D). The one-year limitation period begins at the expiration of the deadline for filing a petition for a writ of certiorari to the United States Supreme Court. *Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000). In addition, the time during which a prisoner seeks state-court collateral review of a conviction does not count toward the limitation period. 28 U.S.C. § 2244(d)(2); *Ege v. Yukins*, 485 F.3d 364, 371–72 (6th Cir. 2007). A properly filed application for state post-conviction relief, while tolling the limitation period, does not reset the limitation period at zero. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003).

Dabney appealed his conviction to the Michigan Court of Appeals, but not to the Michigan Supreme Court. Michigan Court Rule 7.302(C)(3) allows a defendant

-5-

fifty-six days from the date of the Michigan Court of Appeals' decision to file a delayed application for leave to appeal. Dabney's application for leave to appeal to the Michigan Supreme Court was rejected because it was not timely filed. Thus, his conviction became final when the time for seeking such review expired, February 12, 2008. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012). The one-year limitations period commenced the following day, on February 13, 2008, and expired one year later on February 13, 2009.

Dabney's motion for relief from judgment did not toll the limitations period. The motion was filed on February 17, 2011, over two years after the limitations period already expired. *Vroman*, 346 F.3d at 602 (6th Cir. 2003) (holding that the filing of a motion for collateral review in state court serves to "pause" the clock, not restart it).

Dabney argues that the limitations period should be equitably tolled because he was not knowledgeable in the law, the Detroit Crime Lab delayed in retesting ballistics evidence, and newly-discovered evidence by way of affidavits proves his innocence. Equitable tolling is available to toll a statute of limitations when "a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (quoting *Graham-Humphreys v. Memphis Brooks Museum of*

-6-

*Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)). The one-year limitations period applicable to § 2254 is "subject to equitable tolling in appropriate cases." *See Holland v. Florida*, 560 U.S. 631, 645 (2010). To be entitled to equitable tolling, a petitioner must show " '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). A claim of actual innocence may also justify equitable tolling in certain circumstances. *Souter v. Jones*, 395 F.3d 577, 588 (6th Cir. 2005). A petitioner bears the burden of showing that he is entitled to equitable tolling. *Robertson*, 624 F.3d at 784.

First, Dabney argues that his ignorance of the law and legal procedures warrants equitable tolling of the limitations period. It is well-established that ignorance of the law alone does not justify equitable tolling. *Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005). Moreover, an essential component of equitable tolling is a petitioner's diligence in pursuing his rights. *Lawrence*, 549 U.S. at 336. Dabney waited over seven months following the conclusion of collateral review in state court to file his petition for a writ of habeas corpus. Dabney provides no justification for this delay. He was required to act with due diligence to pursue federal habeas review and he did not. Accordingly, he is not entitled to equitable tolling on this

basis.

Second, Petitioner argues that the Michigan State Police took several years to retest the ballistics evidence related to his case following the closure of the Detroit Crime Lab. He states that he did not receive notice that the retesting was completed until July 7, 2011. None of the claims raised in the habeas petition rely upon the retesting of the ballistics evidence. Dabney therefore could have timely filed his habeas petition before the re-testing was completed. Moreover, after the retesting and state-court collateral review were completed, Dabney still waited over seven months to file a habeas corpus petition. Dabney provides no explanation for this delay nor does the Court ascertain one. This delay evidences insufficient diligence to warrant the application of equitable tolling. *See Anderson v. Brunsman*, 562 F. App'x 426, 431 (6th Cir. 2014) (finding petitioner was not entitled to equitable tolling where he waited more than 45 days to file a motion for delayed appeal after receiving a time-stamped copy of the state appellate court decision, and then waited more than six months to file habeas petition after the denial of his delayed appeal).

Finally, Petitioner argues that he is actually innocent and the limitations period should be tolled on that basis. A credible claim of actual innocence may equitably toll the one-year statute of limitations. *See Souter v. Jones*, 395 F.3d 577, 588-90 (6th Cir. 2005). To determine whether a petitioner has satisfied the

-8-

requirements for establishing a cognizable claim of actual innocence to warrant equitable tolling, the court applies "the same actual innocence standard developed in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851 (1995), for reviewing a federal habeas applicant's procedurally defaulted claim." *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007) (citing *Souter*, 395 F.3d at 596). A valid claim of actual innocence requires a petitioner "to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness account, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. "The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (citation omitted). A court presented with new evidence must consider it in light of "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *Id.* "Based on this total record, the court must make 'a probabilistic determination about what reasonable, properly instructed jurors would do.' " *Id.* (quoting *Schlup*, 513 U.S. at 329). This standard does not require absolute certainty about the petitioner's guilt or innocence:

> A petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or, to remove the double negative, that more likely than not any reasonable juror would have

reasonable doubt.

*House*, 547 U.S. at 538.

Dabney relies upon several affidavits to argue his actual innocence. The first is an affidavit from Isaac Woods, dated August 20, 2010. In the affidavit, Woods states that he and two other individuals (Eric Jones and Gary Smith), "carried out an execution/robbery" at a drug house in Detroit on February 16, 2006. *See* Aff. of Isaac Woods (Dkt. No. 14-9, Pg. ID No. 1524). He states that while Dabney was at the drug house and present for the shooting, Dabney was not involved in the shooting. *Id.* Woods identifies Gary Smith as the shooter. *Id.* at 1527–28. Woods states that after the shooting he took the guns to a woman named "Sarah" and told her to hold them for him. *Id.* He also states that he told Sarah that if Dabney called to either not answer or tell him that "I came through." *Id.* at 1530.

In his affidavit, dated June 25, 2009, Gary Smith admits he accompanied two men, known to him as "Leggs" and "E-Jo," first to get some guns and then to a drug house. Dkt. No. 14-19, Pg. ID No. 1532–35. He states that "a black guy" let them into the house. Once in the house, Smith heard some gunshots from a back room that Leggs had walked into. *Id.* at 1534. A "white bald head[ed] guy," E-Jo, and "the black guy" then walked into the back room and Smith heard several more gunshots. *Id.* E-Jo told Smith to pick up the spent shell casings, and E-Jo, Smith, and Leggs

-10-

then left the home and discarded the shells on the highway. *Id.* at 1535.

Finally, Dabney offers Reginald Wilson's affidavit, dated August 24, 2009. Dkt. No. 14-19, Pg. ID No. 1536–37. In the affidavit, Wilson states that he was in the alley near the drug house on the date of the shooting. *Id.* at 1536. He heard some gunshots and then saw three men fleeing the drug house. *Id.* He identified one of them as "Gary," and states that none of the three men was Dabney, who he knew from the neighborhood. *Id.*

The Court is not persuaded that these affidavits satisfy the rigorous actual innocence standard. First, all of these affidavits were executed over three years after the crime occurred. Dabney knew of the existence of these witnesses prior to trial. Neither he nor the affidavits provide any credible explanation why it took over three years for the affidavits to be secured. Woods's affidavit, while identifying someone else as the shooter, places Dabney at the crime and includes a statement that Woods left a message for Dabney with Sarah when he dropped the guns off with her for safekeeping. This statement implies that Dabney may have had some involvement in the crime. Smith's affidavit fails to identify anyone by name. His references to Leggs, E-Jo, a black man, and a white bald-headed man offer no support for Dabney's actual innocence argument. Finally, Wilson's affidavit, which states that Dabney was not one of three men he saw running from the drug house after the

-11-

gunshots were fired, suffers from credibility problems, most notably, it was executed over three years after the crime, despite Wilson's statement that he reached out to Dabney after he learned Dabney had been charged in connection with the shooting. Wilson provides no explanation for the delay or how he ultimately came to provide an affidavit.

The Court finds that Dabney's claim of actual innocence is insufficient to satisfy the demanding actual innocence standard. The affidavits all have significant credibility problems and fall far short of convincing the Court that, in light of these affidavits, when considered in light of all the evidence presented at trial, including the testimony from the one surviving victim identifying Dabney as the shooter, it is "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. It is clear that the evidence presented by Dabney, when considered against the evidence adduced at trial, fails to "show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup*, 513 U.S., at 327. Equitable tolling is not warranted and the petition is untimely.

## V. CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253.

A district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant. . . . If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." Rule 11, Rules Governing Section 2255 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997). To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).

In this case, the Court concludes that reasonable jurists would not debate the Court's conclusion that the petition is untimely. Therefore, the Court denies a certificate of appealability.

## VI. CONCLUSION

The Court finds that Petitioner failed to file his habeas petition within the applicable one-year limitations period. Accordingly, the Court **GRANTS** Respondent's Motion for Summary Judgment, Dkt. No. 13, and the petition for a writ of habeas corpus is **DISMISSED**. The Court **DENIES** a certificate of appealability. If Petitioner chooses to appeal the Court's decision, he may proceed *in forma pauperis* on appeal because an appeal could be taken in good faith. 28 U.S.C. § 1915(a)(3).

Petitioner's Motion to Address Respondent's Failure to File an Answer, Dkt. No. 15, is **DENIED AS MOOT**. Petitioner's Motion for Extension of Time to File Response to Motion for Summary Judgment, Dkt. No. 16, is also **DENIED AS MOOT** because Petitioner's response was timely filed and no extension was necessary.

IT IS SO ORDERED.

Dated:      March 17, 2016

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

-14-